26829. MERRIMAN *v.* CITIZENS BANK & TRUST CO.

Decided December 3, 1938. Rehearing denied December 15, 1938.

*Oliver & Oliver,* for plaintiff.
*Gazan, Walsh & Bernstein,* for defendant.

Broyles, C. J. W. L. Merriman brought an action against Citizens Bank & Trust Company to compel it to pay to him $433.86 which had been set apart to him as a homestead exemption. After both parties had introduced evidence, the court directed a verdict for the defendant and the plaintiff excepted.

The petition substantially alleges: 1. The defendant is a Georgia corporation with an office, agency, and a place of business in Savannah, Chatham County, Georgia. 2. On April 30, 1935, the American Surety Company served a process of garnishment on the defendant. 3. On June 4, 1935, the defendant answered said process by stating that at the date of the service of the summons of garnishment it was not indebted to W. L. Merriman in any sum, but that since that time it had become indebted to him in the sum of $433.86 in this manner: "Defendant (Merriman) was indebted to this garnishee and had given as security his interest in a note and mortgage, which was paid to this garnishee after the service of said summons, the amount so paid . . being $433.86 more than the debt of said Merriman to it. . ." 4. On June 23, 1936, petitioner filed with the ordinary of Chatham County his application for .a homestead, claiming as a part of his exemption said $433.86 held by the defendant under said process of garnishment served on it on April 30, 1935, and based on a judgment which had been procured "in the superior court of Chatham County, Georgia, January 10, 1935, in the case of Dorothy S. Cotton, as administratrix, as plaintiff, and the American Surety Company and W. Leonard Merriman, as defendants, and the Citizens Bank & Trust Company and National Finance Corporation as garnishees, upon which execution was issued April 30, 1935, and transferred by the plaintiff to the American Surety Company." 5. "Notice of the filing of petitioner's application for homestead and exemption and the date of the hearing thereof was given to the defendant according to law." 6. On July 17, 1936, "the ordinary approved petitioner's schedules of real and personal property, including the $433.86 mentioned above," and ordered that said sum "be set apart to the applicant and exempted as personalty," and that the defendant "deliver the same to the applicant for investment under the direction of the court in such articles of personal property as the applicant may desire." 7. Petitioner demanded of the defendant payment of said $433.86 and defendant failed to pay the same.

The defendant's answer admitted paragraphs 1, 2, 3, 5, and 7 of the petition, but put the plaintiff on proof of paragraphs 4 and 6. Further answering, the defendant pleaded in paragraph 6 of its answer as follows: (a) "That after this defendant had filed an answer to the garnishment of the American Surety Company against

W. L. Merriman, as defendant, and this defendant as garnishee . . , Mrs. Leila F. Merriman, the wife . . the plaintiff," filed her claim to said $433.86. (b) On June 23, 1936, the judge of the superior court dismissed said claim because the claimant had not traversed the defendant's garnishment answer, and directed a verdict against the claimant; and thereafter, on the same day "judgment was rendered in favor of the American Surety Company against this defendant, as garnishee . . , for . . $433.86" (c) "That later, on the afternoon of June 23, 1936 . . , within ten or fifteen minutes after said judgment was rendered against it, the attorney for the American Surety Company advised this defendant that judgment had been rendered against it for said sum and it immediately paid over the said sum of $433.86 to the attorneys for the American Surety Company in payment of said judgment." (d) "Approximately an hour after it had paid . . said money to the said attorneys . . , it was notified by the attorney for the . . plaintiff, W. L. Merriman, that he had applied to the ordinary of Chatham County . . for a homestead exemption in said fund, but, at that time, this defendant had already paid to the attorneys for American Surety Company the said sum of money without having had knowledge or notice that the said plaintiff had filed an application for said homestead, if, in fact, at that time he had filed such a petition for homestead." (e) Defendant "says, upon information and belief, that the said sum of money in his possession as garnishee, was not the property of . . W. L. Merriman at the time he filed his petition for a homestead . . , but that said fund was the property of . . Leila F. Merriman and . . that the order . . setting apart said sum of money as a part of the homestead to . . W. L. Merriman is without effect . . for the reason that" it "was not then the property of . . plaintiff."

The plaintiff introduced in evidence a "letter dated April 30, 1935, from the Citizens Bank & Trust Company by Geo. H. Smith, president, to American Surety Company and Edward C. Brennan, its attorney, as follows: 'The Fulton company has made satisfactory arrangements with this bank by which this bank is in position to carry out the agreement of the Fulton company with you, with reference to your claim against the Fulton company and its directors growing out of judgments paid by the American Surety

Company and in the cases of Mrs. Dorothy S. Cotton, administratrix d. b. n. c. t. a. of Matilda Heintz, vs. W. L. Merriman and American Surety Company, and Dorothy S. Cotton, administratrix of the estate of Annie Marie Ehlers vs. American Surety Company. The terms of this agreement are the payment immediately of . . $600 and further payment to be made in the future of $682.46. This balance of $682.46 is to wait a reasonable time until a proposed garnishment proceeding against W. L. Merriman can be terminated. The proceeds of such garnishment proceeding will be applied on the payment of said balance of $682.46. If there be no proceeds from said garnishment proceeding . . , the entire balance of $682.46 will be paid to you in any event. These arrangements also contemplate the payment by the Fulton company of all ·costs and expenses in connection with the. . . proposed garnishment proceedings against W. L. Merriman and all damages which are provided for in the garnishment bond to be given in said . . proceedings . . , without any deduction from the amount ultimately to be paid to the American Surety Company. Said garnishment proceedings are to be brought in the name of American Surety Company as plaintiff. This letter may be accepted by you as an assurance by said bank that said funds have been provided for and will be paid by said bank.' " The plaintiff next introduced in evidence the record of the garnishment proceedings inaugurated pursuant to the agreement contained in the foregoing letter. It appears from that record that on April 30, 1935, Thomas F. Walsh, as the attorney at law for American Surety Company, made the garnishment affidavit and executed the garnishment bond; and that on June 4, 1935, Gazan, Walsh & Bernstein, as attorneys for the garnishee, filed the bank's answer to the summons of garnishment. Since said garnishment answer appears in paragraph 3 of the petition, it need not be repeated here. The record next discloses the claim affidavit of Mrs. Leila F. Merriman to the money in question, this affidavit being dated May 14, 1935. Here the bill of exceptions recites that when the claim case came on for trial on June 23, 1936, Mr. Thomas F. Walsh moved to dismiss the claim on the ground that the garnishee's answer had not been transversed; and that when the court announced it would sustain that motion, counsel for the claimant handed to Mr. Walsh a letter dated June 23, 1936, and addressed to Mr. Thomas F. Walsh, attorney for

American Surety Company and for Citizens Bank & Trust Company, which letter recited that W. L. Merriman would file his application to homestead said $433.86, and that same would be exempt from garnishment.

The bill of exceptions further recites that "counsel for the claimant . . and for the defendant in fi. fa. . . requested the court not to enter judgment until they had filed proceedings for a homestead, which counsel for Merriman stated he would file immediately," but that the court declined the request and entered judgments against the claimant and against the garnishee, both judgments being dated June 23, 1936; and that "counsel for the claimant, Mrs. Merriman, and her husband, immediately went downstairs to the ordinary's office, where W. L. Merriman completed and signed the affidavit to the exemption proceedings and filed the same." The plaintiff next introduced in evidence the record of the homestead proceedings, from which it appears that, "no objections having been filed," the ordinary, on July 17, 1936, "set apart to the applicant" said sum of $433.86 as a part of his homestead and ordered Citizens Bank & Trust Company "to deliver the same to the applicant for investment under the direction of the court in such personal property as the applicant may desire." The plaintiff next introduced in evidence a letter dated June 23, 1936, from Oliver & Oliver to George M. Smith, president Citizens Bank & Trust Company, which letter was a notice that Merriman had filed his application for homestead, and stated that "we give you notice so that you may hold these funds subject to action of the court of ordinary upon Mr. Merriman's application for homestead."

The bill of exceptions next recites that "it was agreed . . that the check for $433.86, which was testified to have been delivered to Mr. Walsh on the afternoon of June 23, 1937 [1936 ?], was actually deposited by Gazan, Walsh & Bernstein, of which firm Mr. Walsh is a member, on June 24, 1937 [1936 ?]." The plaintiff introduced in evidence a "letter dated June 24, 1936, from Citizens Bank & Trust Company by George H. Smith, president, to Oliver & Oliver," which states that "sometime prior to the delivery of your letter [of 23d instant], we were advised by Mr. Thomas F. Walsh, of the firm of Gazan, Walsh & Bernstein, that judgment against said fund had been rendered in the superior court and we paid over to them as attorneys for the American Surety Company

said sum of $433.86." The formal notice of the application for the homestead, dated June 24, 1936, to Citizens Bank & Trust Company was next introduced in evidence. Indorsed thereon was the notation: "Rec'd 2:05 p. m. 6/26/36. . . Copy sent to T. F. Walsh 6/26." A similar notice was served on American Surety Company on June 26, 1936. There was next introduced in evidence a check for $682.46, dated July 29, 1936, drawn on Citizens Bank & Trust Company, payable to "order of Edward C. Brennan, Atty. American Surety Co.," and signed "Gazan, Walsh & Bernstein, by Thomas F. Walsh." This check was indorsed by Mr. Brennan for deposit, and was paid through the Savannah clearing house on July 29, 1936. It was agreed that this check "included the check for $433.86 received by Mr. Walsh from the bank in payment of the garnishment judgment. . ." There was next introduced in evidence a letter dated August 4, 1936, from Oliver & Oliver to the defendant, making a formal demand for the $433.86. The record next discloses a letter dated August 5, 1936, from George H. Smith, president, to Oliver & Oliver, which reads in part as follows: "In reply we beg to say that this . . money was paid to the attorney for the American Surety Company before we had any notice of the granting of a homestead exemption to Mr. Merriman. In your letter you refer to actual notice having been given to our attorney, Mr. Thos. F. Walsh, and to this company while this company still had custody and control of said funds. Our attorney, Mr. Walsh, advises us that he had no notice of the filing of the petition for homestead at the time this money was paid to the American Surety Company. He advises that you, as attorney for Mr. Merriman, notified him that you intended to apply for homestead. Speaking for the bank, we beg to say that no notice was given us until after the money had been paid. . . We are advised that Judge Saussy [the ordinary] has no jurisdiction to determine the ownership of this fund. We therefore must decline to honor your demand for payment of the money to Mr. Merriman."

Mr. George H. Smith, sworn for the defendant, testified in part: "I am president of the Citizens Bank & Trust Company and was on June 23, 1936, when Mr. Merriman applied for a homestead on this fund. There is no dispute that on the evening of June 23d, in the neighborhood of 6 o'clock, Mr. Oliver left a notice at the

Citizens Bank & Trust Company. . . I received the letter after I had delivered the check to you [Mr. Walsh] for the money held up by the garnishment proceedings. This is the check. . . On the back of the check is my . . endorsement. At the time I delivered that check I did not have any knowledge that Mr. Merriman had filed . . a petition for homestead . . ; I don't think I did. . . It is true that Mr. Walsh, representing the bank and me, was conferring with Mr. Brennan, representing the American Surety Company, about the prospective garnishment upon this very fund. So, that was consummated in April, by means of this letter of April 30, 1935. The result of . . those negotiations was that in order to pay a judgment which the administratrix of the estate of Heintz had obtained against Mr. Merriman, as administrator, the Fulton company would obtain money from our bank to pay that judgment, or to pay a certain part of it, and the bank would hold this fund to assist in paying it. The contents of this letter [of April 30, 1935] . . represent the result of the negotiations, as reported to me by Mr. Walsh and Mr. Brennan. The result was the bank was going to lend the money, on account of this judgment, some $1282, of which $600 was to be paid in cash, and the balance of $682 was to be caught as a result of this particular garnishment which was in prospect. . . When this case was tried before, I stated that I could not say whether or not Mr. Walsh had told me about this homestead proceeding at the time I gave him this check. I still say I am not sure as to that. . . I don't know whether he did or not. Now, after I had given Mr. Walsh this check, it is true that he deposited it next day in our bank. It shows here deposited on the 24th. He came in after banking hours and the books for the day had been closed, and it went in the business of the 24th. . . I said when this case was tried before and say now, 'I don't say he did not tell me he had notice of the application for a homestead; and if, after I had gotten notice of the application pending for a homestead, I [had] said to any employee of the bank to stop payment of the check, certainly the employee would have obeyed me.' With reference to . . that letter . . which I wrote as president of the bank, I will explain that arrangements had been made with me by certain other persons for providing the money. There had been arrangements made by which the bank would let them have the money. . .

My arrangements had been made with the persons who would borrow the necessary money." At this stage of the case the defendant introduced in evidence "the entire record, showing the judgment against the bank for the amount of this deposit, as garnishee; and . . in the case of Mrs. Leila F. Merriman, claimant, a judgment against the Citizens Bank & Trust Company for $433.86 in favor of the plaintiff in fi. fa., American Surety Company. . ."

Paul T. Jones, sworn for the defendant, testified in part: "I am vice-president and cashier of the Citizens Bank & Trust Company. About May 6, 1935, the Citizens Bank & Trust Company collected some money for the account of Mr. Merriman; it was on May 7, 1935, we collected $875.82. . . The first thing we did with it, we retired a note of Mr. Merriman's . . and got a check for the balance here of $433.86. . . The difference between that check and the $875.82 went towards retiring a note of Mr. Merriman's that the bank held. It was $441.96 that Mr. Merriman owed the bank, and the balance here is $433.86. After we had paid out that part of the fund, there was a garnishment served against the bank. . . Immediately on that day, May 6, 1935, we had a garnishment served on us for the balance. Then, of course, we could not pay this money out, and we simply drew a check for it . . and held it in our files. This is the check . . dated May 6, 1935, and it was held by our bank until June 23, 1936. . . I notice it was deposited and paid on June 24th. . . We segregated the amount by issuing a cashier's check for it, and that check was delivered June 23, 1936."

Thomas F. Walsh, sworn for the defendant, testified in part: "Immediately upon entering up the judgment . . against the garnishee, I saw a book that Mr. Oliver . . had gone off and left, or forgotten. . . I picked it up and went to the ordinary's office. I saw Mr. Merriman walking up and down the corridor. I did not know what they were doing. I suspected what they were doing. I simply showed Mr. Oliver the book and said, 'Edgar, you left this book, and I will take it and leave it at the office.' Then I . . went down to the bank and got . . the check. Mr. Smith said he did not remember whether I told him anything about the homestead, but I was very careful not to tell him anything about it, and he learned about it afterwards. I said to Mr. Smith, 'The American Surety Company has a judgment against

you for the amount you have on hand and give me the money.' He picked up this check and indorsed it, 'pay to the order of Gazan, Walsh & Bernstein, attorneys for American Surety Company.' Mr. Smith had absolutely no knowledge this proceeding was being attempted, not until after the check had been turned over to me." On cross-examination, Mr. Walsh swore: "I am attorney for the bank; I get a retainer to represent them, and I am a member of the board of directors of the bank. I am the attorney who had negotiations with Mr. Brennan relative to the settlement of this judgment. . . I presume a result of the negotiations was the writing of this letter by Mr. Smith. Immediately after the dismissal of the claim case, you [Mr. Oliver] went downstairs and left me up here while I was taking the judgment. Then I went downstairs and saw you in the offices of the court of ordinary. . . I saw you in the ordinary's office, and I presumed you were about the business of filing the homestead papers, but I did not see exactly what was going on. I would not have known what you were doing if you had not told me what you were doing, or going to do. . . I suspected that you were proceeding about filing a homestead application, but did not know you had the papers filled out. You did not tell me you had it prepared. All you did was hand me the letter, and notified me that you were going to do it. . . After the case ended, I went and got the check, and I suppose it took me a few minutes; it is not more than a five minutes walk from here to the Citizens Bank & Trust Company. I walked right down there, and told Mr. Smith they got the judgment, and asked him to give me the money. He said, 'Well, here is the check we issued,' and he indorsed it over to me. As a matter of fact, I asked if he had the money, and he said . . the vault was closed up and he did not have the cash. I asked him for the money rather than the check. Mr. Smith did not ask me whether I wanted the money or the check. He said the vault was closed and they did not have the money out, and I said, 'Give me the check, indorse it to me,' and he did it. . . I did not see Mr. or Mrs. Merriman hand you the money for the costs of the homestead papers. All I know about that is what was brought out in the last trial; that they had to go over and get some change from the clerk's office of the superior court, across the hall."

The defendant having rested his case, W. L. Merriman, sworn

for the plaintiff, testified in part: "I did not ever complete that gift. . . When we came up here . . you [Mr. Oliver] knew we would probably have that case decided against us, and you were prepared to file homestead proceedings. You told me you did not think we had much chance winning the claim case, and you would have application for homestead filed right away. As soon as the case was decided you handed Mr. Walsh this letter, and then we went downstairs to the ordinary's office. Later Mr. Walsh came in the ordinary's office. I do not know whether Mr. Walsh saw the money paid for the costs of the application for the homestead; I don't know what Mr. Walsh saw. I just saw him walk inside the office, and . . speak to Judge Saussy, and when he came out he mentioned to you about a book, and I walked out as far as the door with him. . . I don't know what I told him about the homestead exactly. Only one thing I do remember that I said to him is, I said I was sorry I had to do that to protect my interest. . . I did come up here to the trial of the claim case with Mrs. Merriman. I came . . to state that I tried to give her the money. I would not have said I had given it to her . . because I had not. I intended to go on the stand for her and state that I tried to give her that money. . . I knew I had not completed the gift. I thought at first it had been, but it never was. I knew that Mr. George Smith did not recognize the claim for some reason. . . It was not possible for Mr. Walsh to walk from the court-house to the bank before that homestead paper was marked filed and docketed; I think it was filed while Mr. Walsh was there. I know he came in there, and I handed Mr. Frank Williams a twenty-dollar bill and he had to walk across the hall to get it changed and he gave me back five dollars. I do not remember that it was testified in the other trial that they had to have one of the clerks in the ordinary's office copy the affidavit, or . . prepare an affidavit. That was all done before Mr. Walsh came in. I did find I had to pay fifteen dollars for filing the petition. Mrs. Merriman had a twenty-dollar bill and they did not have the change and they had to go somewhere else to get the change. The papers were actually being filed while Mr. Walsh was in the ordinary's office, and I believe they were filed. I don't know whether Mr. Walsh could have gone with wings, before the paper was filed, to the bank, but I know he could not have walked down there."

Mr. E. J. Oliver, sworn for the plaintiff, testified: "For reasons of my own I did not think I could prevail in that claim case for the claimant, and I had already prepared a homestead proceeding to be filed downstairs immediately after the termination of the claim case; and, as soon as the judge had decided, or stated what he was going to do, I then handed Mr. Walsh a letter . . advising him of what I was going to do, and immediately I went downstairs, leaving Mr. Walsh here in the court-room. While we were down there actually filing the papers Mr. Walsh came down there and saw them. I don't see how he could help seeing them. At least, he was there, and he knew what we were doing. The papers were filed before he got out of the court-house, and certainly before he could have gotten down to the bank after that. I suppose maybe in half an hour I gave Mr. Smith a subsequent written notice."

Mr. Thomas F. Walsh was recalled and testified: "I transmitted that money to the American Surety Company, together with other money, to Edward C. Brennan, attorney for the American Surety Company, on July 29, 1936. I have the check that paid it." (The reference being to the check for $682.46 hereinbefore described.) The record next discloses the check for the money which the garnishee bank answered it held as the property of Mr. Merriman, and which is as follows: "Savannah, Ga. May 6, 1935 No. 18906. Citizens Bank & Trust Company. Pay to the order of Citizens Bank & Trust Co. Account garnishment American Surety Co. vs. W. L. Merriman, $433.86, C. B. & T. Co. $433 & 86 cents—dollars. Cashier's check. (Sgd) Paul T. Jones, cashier." On the back of this check is written: "Pay to the order of Gazan, Walsh & Bernstein, attorneys for American Surety Co. Citizens Bank & Trust Co. Geo. H. Smith, Pt.;" and "Gazan, Walsh & Bernstein, attorneys for American Surety Co. For Deposit Gazan, Walsh & Bernstein. Punched so as to show payment 6-24-36."

We quote from the bill of exceptions: "Mr. Thomas F. Walsh, counsel for the defendant, moved to direct a verdict in favor of the defendant upon the ground that the evidence did not show notice to the bank of the filing of the homestead proceedings prior to the delivery of the check to him on June 23, 1937 [1936?]. Counsel for plaintiff also asked for a directed verdict in favor of the plaintiff upon the ground that the evidence showed notice to the defendant of the pendency of the homestead proceedings prior to the

delivery of the check to Mr. Walsh." The court directed the verdict for the defendant, and the exception is to this judgment.

In his written opinion, rendered in connection with the judgment directing the verdict, the court said: "Notice to an attorney, who is a director, and attorney when needed, for a bank, is not notice to the bank where it does not appear that as director he is actively in charge of the bank's business, or that as attorney he was representing the bank in regard to the matter covered by the notice. Since it appears that the filing by Mr. Merriman of a petition for a homestead, to include the funds in dispute, was the beginning of an action, in which no one could assume that the bank would employ Mr. Walsh, we hold that the alleged notice to Mr. Walsh of the application for the homestead was not notice to the bank. Even if it was notice to the bank, the sufficiency of it is very doubtful." Evidently, the court based the direction of the verdict on the theory that, while the sufficiency of the notice was very doubtful, in any event, notice to Mr. Walsh was not notice to the bank because Mr. Walsh did not represent the bank in the homestead proceedings. In our opinion, however, the evidence authorized a finding that the defendant was financially interested in the matter of finally subjecting the plaintiff's property to the surety company's judgment, and that necessarily it was also interested in the plaintiff's application for a homestead exemption of that property, although it was not a party to that proceeding. The evidence also authorized the jury to find that the application for the exemption was filed before the defendant gave its check for the sum of $433.86 to Mr. Walsh, as attorney for the surety company; and that he, although not representing the defendant or any one else in the exemption proceedings, in obtaining the check from the defendant and in giving his law-firm's check for the sum of $682.46 to Mr. Brennan, as attorney for the surety company, was acting in the dual capacity of counsel for both the surety company and the bank, and that notice to him of the filing of the application for a homestead exemption was notice to the defendant. It follows that the direction of a verdict for the defendant was error.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*